IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| GAIL WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C/A No. 3:08-CV-2631-DCN-JRM |
| v. | ) | |
| | ) | **ORDER and OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on plaintiff's motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Plaintiff requests $6,280.00 in attorney's fees on the grounds that she is a prevailing party entitled to attorney's fees by the EAJA. Defendant contests the awarding of such fees, claiming that the government's position was substantially justified. Plaintiff further asks this court to pay the fees directly to plaintiff's counsel, and defendant objects because the statute requires that the fees be paid to plaintiff. For the following reasons, plaintiff's motion is granted as to the awarding of attorney's fees and denied as to those fees being made payable directly to plaintiff's counsel, but the court orders that the check be sent to plaintiff's attorney.

## I. BACKGROUND

In March 2006, plaintiff filed an application for disability insurance benefits

(DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 410-33, 1381-83.  Plaintiff alleged she became disabled on January 1, 2005, as a result of low back pain, arthritis in her knees and ankles, high blood pressure, carpal tunnel syndrome, obesity, and depression.  Tr. 89.  On November 9, 2007, an administrative law judge ("ALJ") found that plaintiff was not disabled according to the Social Security Act.  Tr. 22-31.  The ALJ applied the five-step sequential evaluation process required by 20 C.F.R. § 404.1520(a)(4) to determine whether an individual is disabled.  Tr. 19-31.  Based on this evaluation, the ALJ found that plaintiff had the severe impairments of obesity, tachycardia, and carpal tunnel syndrome.  However, the ALJ also found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1.  Tr. 24-26.  Specifically, the ALJ found that plaintiff had the residual functional capacity (RFC) to sit for six hours of an eight hour day; stand/walk for two hours of an eight hour day; frequently lift/carry light items; and occasionally lift ten pounds.  Tr. 26.  While the ALJ held that plaintiff was not able to perform any of her past work, he determined that considering plaintiff's age, education, work history, and residual functional capacity, there were many jobs that existed in the national economy that she could perform.  Tr. 30.  Due to this evaluation, the ALJ found that plaintiff was not under a "disability" as defined in the Social Security Act from January 1, 2005, through the date of the decision.  Tr. 30.  The Appeals Council rendered the Commissioner's determination final when it denied plaintiff's request to review the ALJ's decision on May 28, 2008.  Tr. 2-6.

Towards the end of the administrative hearing, the ALJ told plaintiff that he did not have all of her medical records since she had been hospitalized earlier that year and had also been to Roper Hospital and Sea Island Medical Center (in addition to the Medical University of South Carolina ("MUSC")) for treatment.[1]  Tr. 41-42.  The ALJ stated, "I will have to, after this hearing is over, contact MUSC, and contact Roper.  I will update the treatment records for you this year.  After I've gotten all those records, I will make a decision, okay?"  Tr. 47-48.  Thereafter, the ALJ did contact MUSC to provide additional medical records, but there is no evidence that he ever contacted Roper Hospital or Sea Island Medical Center.

Additionally, the ALJ's decision relied on the Medical-Vocational Guidelines (the "grids"), located at 20 C.F.R. Part 404, Subpart P, Appendix 2.  The ALJ determined that plaintiff was not "disabled" according to the grids, but the grids are not relevant to "nonexertional impairments," such as carpal tunnel syndrome.  See Social Security Ruling 96-9p.  In such cases, a vocational expert should be relied on to determine disability.  Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989).  The ALJ did not consult a vocational expert before rendering his decision.

Plaintiff brought this action on July 23, 2008, to obtain judicial review of the ALJ's decision denying her claim for DIB and SSI.  On November 24, 2009, the magistrate judge issued a report recommending that plaintiff's case be reversed and remanded for further administrative proceedings.  The magistrate judge recommended

---

[1] Plaintiff was not represented by counsel during the proceedings before the ALJ.  Tr. 35.

remand because he found that the ALJ did not properly develop the record by failing to request the medical records from Roper and Sea Island Medical Center. The magistrate judge also found that the ALJ erred in relying on the grids to support his "not disabled" decision as opposed to consulting a vocational expert. After considering defendant's objections and reviewing the report and recommendation de novo, this court adopted the magistrate judge's report and recommendation on March 17, 2010.

Plaintiff filed a motion for attorney's fees under the EAJA on June 14, 2010, seeking $6,280.00 in fees for 39.25 hours of work at the rate of $160.00 per hour. Defendant objects to plaintiff's request for an award under the EAJA arguing that the government's position was substantially justified. Defendant further objects to plaintiff's motion on the grounds that plaintiff requests that the award be paid directly to her counsel when the statute requires it to be paid to plaintiff.

## II. DISCUSSION

### A. Substantially Justified

Section 2412(d)(1)(A) of the EAJA provides:

> [The] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A); see Crawford v. Sullivan, 935 F.2d 655, 656 (4th Cir. 1991).

In determining the justification of the government's position, "a petitioner may rely on either a prelitigation position or a position taken during litigation as a predicate for fees."

4

Thompson v. Sullivan, 980 F.2d 280, 281 (4th Cir. 1992); see Commissioner v. Jean, 496 U.S. 154 (1990).  To be substantially justified means "more than merely undeserving of sanctions for frivolousness."  Evans v. Sullivan, 928 F.2d 109, 111 (4th Cir. 1991).  Although, a position can be justified even if it is incorrect and substantially justified if a reasonable person could think it is correct.  Pierce v. Underwood, 487 U.S. 552, 566 n.2 (1988).

The government bears the burden of proving that its position was substantially justified.  Thompson, 980 F.2d at 281.  To meet this burden, the government must establish that its case has a reasonable basis both in law and in fact, meaning that it is justified to a degree that could satisfy a reasonable person.  Pierce, 487 U.S. at 565.  More specifically, "favorable facts will not rescue the government from a substantially unjustified position on the law; likewise, an accurate recital of law cannot excuse a substantially unjustified position on the facts."  Thompson, 980 F.2d at 281.  To hold that the position of every loser in a lawsuit was unjustified "would be a war with life's realities."  Evans, 928 F.2d at 110.  As such, "there is no presumption that the Government position was not substantially justified, simply because it lost the case."  Crawford, 935 F.2d at 657 (citation omitted).  However, the government's burden cannot be satisfied merely because it produced "some evidence" in support of its position.[2]  Petrella v. Sec. of Health and Human Servs., 654 F. Supp. 174, 177 (M.D. Pa. 1987).  In

---

[2] The court agrees with the government that the standard for determining whether the government's position was substantially justified is not equivalent to the substantial evidence standard required by the Social Security Act.  The standard, as mentioned previously, is whether the government's position was substantially justified in both law and fact.  Thompson, 980 F.2d at 281.

order to be substantially justified in law, the government must have followed the applicable laws and regulations. <u>Randolph v. Sullivan</u>, 738 F. Supp. 305, 306 (C.D. Ill. 1990). "Where the government's position was a result of its failure to perform a certain analysis required by the law and its regulations, the government's position was not substantially justified." <u>Adams v. Barnhart</u>, 445 F. Supp. 2d 593, 595 (D.S.C. 2006) (citing <u>Randolph</u>, 738 F. Supp. at 306).

According to 42 U.S.C. § 423(d)(5)(B), "[i]n making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) *all medical evidence*, including diagnostic tests, necessary in order to properly make such determination." (Emphasis added). Thus, the ALJ was under a duty to fully develop the record prior to ruling on plaintiff's disability. Furthermore, where a claimant is unrepresented, the "ALJ [is] under a heightened duty to develop the record in order to ensure a fair hearing because [plaintiff is] appearing pro se." <u>Ericksson v. Comm'r of Soc. Sec.</u>, 557 F.3d 79, 83 (2d Cir. 2009). In this case, the ALJ recognized that he was responsible for gathering all of the pro se plaintiff's medical records before he made a determination regarding her disability. The Fourth Circuit has clearly established that a pro se claimant is "entitled to the sympathetic assistance of the ALJ to develop the record, to assume a more active role and to adhere to a heightened duty of care and responsibility." <u>Crider v. Harris</u>, 624 F.2d 15, 16 (4th Cir. 1980) (internal quotation marks and citation omitted).

It is clear from the record that the ALJ failed to obtain all of plaintiff's medical

records.  The ALJ was familiar with plaintiff's medical history because he asked her where she received all of her medical treatment.  Tr. 38-45.  Plaintiff informed the ALJ that she received medical care from MUSC and Roper.  Tr. 39.  In response, the ALJ referred to plaintiff's recent visit to MUSC, saying "I don't have those records," and further, "[i]f you went to Roper at all, I don't have those records, as well."  Tr. 47.  The ALJ explained that he could not make a decision without "all of the information" and that "I will have to, after this hearing is over, contact MUSC, and contact Roper.  I will update the treatment records for you for this year.  After I've gotten all those records, I will make a decision, okay?"  Tr. 47-48.  The transcript shows that he was partially successful in following through with this promise, getting records from MUSC the same day as plaintiff's hearing.  Tr. 234.  However, there is no showing that the ALJ attempted to get her medical records from Roper or Sea Island Medical Center.  The ALJ understood that he was under a duty to fully develop the record and even indicated to plaintiff that he would do so when he realized that some of the records were missing.

In addition to the failure to develop the record, the ALJ also erred by improperly relying on the grids to determine that plaintiff was not disabled.  During step five of the sequential evaluation process required by 20 C.F.R. § 404.1520(a)(4), the government carries the burden of showing the existence of jobs the plaintiff could perform in the national economy.  The ALJ utilized the grids to aid in making this determination.  However, each grid:

> [C]onsiders only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability.  Thus, in cases where pain occurs only upon exertion and limits one's strength functioning, the grid tables will apply.  But

> when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines.

Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)). A vocational expert must be used to prove that jobs exist when it is improper to rely on the grids to make the step five determination because a claimant also suffers from nonexertional limitations. Walker, 889 F.2d at 49-50.

Plaintiff contended that her carpal tunnel syndrome caused her nonexertional impairment, and the medical reports included in the record supported this contention. Tr. 42-43, 48, 145-46, 229. Social Security Ruling 96-9p delineates that the capacity for nonexertional manipulation is involved in unskilled sedentary work, and:

> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base . . . [w]hen the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

There is ample evidence in the record suggesting that plaintiff's carpal tunnel syndrome limited her manipulative abilities significantly. In addition to multiple medical records diagnosing and treating her carpal tunnel syndrome, plaintiff complained of constant pain in her hand with "no strenght [sic] to pick up anything" in her disability report. Tr. 96. Further, a state agency employee who assisted in preparing plaintiff's disability report, noted that plaintiff struggled with writing and using her hands. Tr. 103. The state medical consultant also concluded that her handling and fingering were impaired. Tr. 222.

The ALJ misstated the record with regards to plaintiff's medical treatment of her carpal tunnel syndrome. Tr. 28. His decision regarding her nonexertional limitations

was thus not supported.  Upper extremity limitations are very significant at the sedentary level, as indicated by SSR 96-9p, and plaintiff exhibits such limitations.  Therefore, the ALJ erred in relying on the grids, rather than consulting with a vocational expert to reach his decision of "not disabled."

In this case, the court finds that the government's position regarding the full development of plaintiff's medical records and the improper use of the grids is not substantially justified.  Regarding the medical records, the ALJ had a well-established "heightened duty" to gather all relevant records for this plaintiff, who, at the time, was proceeding pro se.  In light of this clear directive regarding the gathering of records for pro se plaintiffs, the ALJ's failure to ensure plaintiff's medical history was complete and his subsequent reliance on an admittedly incomplete record in this case were not substantially justified.  Regarding the ALJ's failure to consult a vocational expert, the ALJ misunderstood the record as it applies to plaintiff's manipulative limitations, which ultimately caused his incorrect decision to rely on the grids only.  An accurate reading of the record would have led the ALJ to determine that a vocational expert was necessary. This court cannot justify the failure to gather a pro se plaintiff's medical records in light of controlling precedent that requires as much, and, likewise, cannot justify a failure to construe the record accurately.  Accordingly, this court finds that the government's position was not substantially justified.

### B.  To Whom Fees Are Payable

The EAJA provides that attorney's fees are payable to the "prevailing party."  28 U.S.C. § 2412(d)(1)(A).  It is no longer disputed that plaintiff is the prevailing party.

However, plaintiff requests that the fees, if awarded, be paid directly to plaintiff's counsel.  In support of this request, plaintiff submitted an affidavit with her motion that states:

> I hereby assign any entitlement that I may have to a fee under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), to my attorney, Nowell S. Lesser.  I acknowledge that the fee compensates my attorney for representing me before the United States District Court.  Therefore, I ask that the EAJA award be made payable to Nowell S. Lesser and not to me as Plaintiff.

(Washington Aff. ¶ 3.)  Defendant objects to this request on the basis that the statute provides that EAJA fees are payable to the prevailing party, not her counsel.  Defendant relies on a recent Supreme Court decision which held that attorney's fees under the EAJA are payable directly to the litigant instead of to litigant's counsel.  See Astrue v. Ratliff, 130 S. Ct. 2521 (2010).  Defendant contends that this is so regardless of whether the plaintiff has assigned her rights in the fees to her attorney.

Whether attorney's fees are payable to the actual party or to their counsel is an "issue [that] has engendered a circuit split."  Stephens v. Astrue, 565 F.3d 131, 137 (4th Cir. 2009).  Prior to the recent Supreme Court ruling in Astrue v. Ratliff, the Fourth Circuit held "in light of the clear statutory text, that the better answer is that attorney's fees under the EAJA are payable to the claimant, not the attorney."  Stephens, 565 F.3d at 137.  The statute is clear and Astrue v. Ratliff is controlling:  EAJA fees are payable to the plaintiff.  Such is the case even where the plaintiff has attached an affidavit to the motion for attorney's fees.  See Hall v. Astrue, 2008 WL 905218, at *1 (10th Cir. April 4, 2008) (holding that regardless of the fact that plaintiff's affidavit "assign[ed] his rights in the fees award to counsel and agree[d] that the award be paid to counsel," the EAJA

clearly states that the fees are payable to the prevailing party).  Plaintiff's affidavit assigning her rights to the fees to her attorney does not overcome the statutory language requiring that the fees be paid to the "prevailing party."  Therefore, plaintiff's motion is denied as to the request for the EAJA fees to be paid directly to plaintiff's counsel.

Plaintiff has requested an award of attorney's fees based on the $125 per hour statutory rate, plus a cost of living increase pursuant to the Consumer Price Index (CPI), equaling a rate of $160 per hour.[3]  The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A). The Fourth Circuit has noted that the CPI is an appropriate tool to utilize in calculating a cost of living rate adjustment to a statutory fee.  See generally Sullivan v. Sullivan, 958 F.2d 574 (4th Cir. 1992).  Defendant does not object to the amount requested by plaintiff. Accordingly, the court finds the amount requested is reasonable and is a correct calculation of the amount due under the law.

---

[3] Plaintiff does not seek an increase due to special circumstances.

### III.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that plaintiff's motion for attorney's

fees is **GRANTED** as to the awarding of attorney's fees in the amount of $6,280.00 and

**DENIED** as to those fees being payable directly to plaintiff's counsel.  Although the

check for the fees must be payable to the order of plaintiff, the check itself should be

mailed directly to plaintiff's attorney.

    **AND IT IS SO ORDERED.**

            _____
            **DAVID C. NORTON**
            **CHIEF UNITED STATES DISTRICT JUDGE**

**July 29, 2010**
**Charleston, South Carolina**